UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DUNYASHA YETTS<br>4533 Saint Andrews Dr.<br>Steubenville, OH 43953<br><br>Plaintiff,<br><br>vs.<br><br>U.S. WELL SERVICES, LLC,<br>770 S. Post Oak, # 405<br>Houston, TX 77056<br><br>*Please serve:*<br>Cogency Global Inc.<br>3958-D Brown Park Drive<br>Hilliard, OH 43026<br><br>and<br><br>SEAN CARLSON, in his individual and official capacity as supervisor for US. Well Services, LLC<br>3294 Lodge Rd. SW<br>Sherrodsville, OH 44675<br><br>Defendants. | ) | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT** |

Plaintiff, Dunyasha Yetts, by and through counsel, for his Complaint against Defendants, U.S. Well Services, LLC ("USWS") and Sean Carlson ("Carlson"), states and alleges the following:

**NATURE OF ACTION**

1. This action arises under: Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*.; Civil Rights Act of 1866 as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, 1981a; the Americans with Disability Act as amended ("ADA"),

42 U.S.C. § 12101, *et seq.*; the Ohio Civil Rights Act as amended, Ohio R.C. § 4112.01, *et seq*.; and Ohio common law.

**PARTIES**

2. Plaintiff, an African American resident of Jefferson County, Ohio, was employed by USWS from May 12, 2015 to August 3, 2016.

3. USWS, a limited liability company with a regional facility in Uhrichsville, Ohio, Tuscarawas County ("Uhrichsville District") and headquarters in Houston, Texas, conducts a substantial part of its business activities in Ohio, and is an "employer" as the term is defined under 42 U.S.C. § 2000e and Ohio R.C. § 4112.01.

4. Carlson, a resident of Carroll County, Ohio, was employed by USWS as a Crew Supervisor, was Plaintiff's supervisor from May 2015 through August 2015, and was an "employer" as the term is defined under Ohio R.C. § 4112.01.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331, as part of Plaintiff's claims arise under the laws of the United States.

6. This Court has supplemental jurisdiction over Plaintiff's claim arising under Ohio law pursuant to 28 U.S.C. § 1367.

7. Venue properly lies in this Court pursuant to 28 USC § 1391 because one of the Defendants (Carlson) resides in this judicial district, and a substantial part of the events and/or conduct giving rise to this action occurred in this judicial district.

8. All conditions precedent to the institution of this lawsuit have been satisfied. On May 23, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") (Ex. 1), and on February 12, 2018, the EEOC mailed Plaintiff a Notice of Right to Sue (Ex. 2).

**FACTUAL ALLEGATIONS**

9. USWS is a private fracking company that provides hydraulic fracturing services in various unconventional oil and natural gas basins ("fracking sites") for various exploration and productions companies throughout the country.

10. Fracking employees of USWS generally work in fleets, with each fleet consisting of, *inter alia*, a Crew Supervisor, a Crew Chief, and various Equipment Operators (whom report to Chew Supervisors and Crew Chiefs"), whom work together at assigned fracking sites in their district.

11. At all times relevant hereto, there were 3 fleets (fleets 1, 4, and 8) in the Uhrichsville District, which were commonly referred to as "in-town" fleets.

12. In Spring 2015, when Plaintiff was employed with Keane Frac (a competitor of USWS), Sarah Herman ("Herman"), Human Resources Administrator at USWS's Uhrichsville District facility, contacted Plaintiff and offered him a position of Equipment Operator with USWS.

13. Plaintiff, who had extensive fracking experience, initially asked Herman whether there were any openings for a Crew Chief or Crew Supervisor position.

14. Herman responded that there were no open Crew Chief or Crew Supervisor position at that time, but assured Plaintiff that he would considered for the next Crew Chief or Crew Supervisor position that became available.

15. Plaintiff also made it clear to Herman that if he joined USWS, he needed to be on a local fleet (i.e., those working at fracking sites near Plaintiff's home and the Uhrichsville District facility) because his wife was suffering from stage 4 cancer. In response, Herman assured Plaintiff that, if he accepted the Equipment Operator position with USWS, he would be assigned to fleet 8, a local in in-town fleet.

16. In reliance on Herman's representation, Plaintiff accepted USWS's offer of employment, and resigned from his position with Kean Frac.

17. Despite Herman's promise, USWS placed Plaintiff on fleet 7, an out-of-town fleet, and his first assignment was at fracking sites in West Virginia.

18. At that time, Carlson was the Crew Supervisor for fleet 7.

19. On May 22, 2015, the first day Plaintiff met Carlson, Carlson asked Plaintiff if he likes to be urinated on in a sexual way.

20. Plaintiff, flabbergasted and offended by Carlson's question, told Carlson not to ask him questions like that or any other questions about his sexual activity ever again.

21. That evening, Plaintiff called Operations Manager for the Uhrichsville District, Chris Treadway ("Treadway"), told him about Carlson's comment, and requested to be transferred to a different fleet, but Treadway denied Plaintiff's request.

22. Thereafter, Carlson continued to sexually harass Plaintiff, including by, *inter alia*: making sexual gestures to Plaintiff, repeatedly touching Plaintiff's penis, and constantly sending Plaintiff sexually offensive text messages, despite Plaintiff having repeatedly asked him to stop.

23. In approximately early July 2015, Plaintiff came to learns of two (2) Crew Chief and two (2) Crew Supervisor position openings for fleet 1 and fleet 4, both of which were in-

town fleets, so Plaintiff asked Herman about applying for those openings, to which Herman responded that no such positions were available.

24. A few weeks later however, USWS hired a Crew Chief and a Crew Supervisor for fleet 1, and a Crew Chief and a Crew Supervisor fleet 4, all of whom were Caucasian, all of whom were less-qualified than Plaintiff, and at least one of whom had no prior fracking experience at all.

25. On August 11, 2015, when working at a fracking site in Belmont County, Ohio, Carlson snuck up behind Plaintiff and began trusting his crotch against Plaintiff's buttocks.

26. At that point, Plaintiff could no longer deal with Carlson's severe and pervasive harassment, so on August 18, 2015, Plaintiff prepared and submitted a written complaint to Herman and US Well Services corporate office, in which he described, in detail, the sexual harassment to which he was being subjected by Carlson, including the event that took place on August 11, 2015.

27. Upon receiving Plaintiff's Complaint, Herman met with Plaintiff told him that there are two sides to every story. Herman did, however, assure Plaintiff that Carlson would no longer be assigned to the same fracking site as Plaintiff.

28. Nonetheless, the next two day following the meeting, Plaintiff was assigned to the same fracking site that Carlson was supervising.

29. In approximately September 2015, USWS finally reassigned Plaintiff to an in-town fleet, fleet 8.

30. Shortly after Plaintiff joined fleet 8, a Crew Chief position became available on fleet 4 (also an in-town fleet), so Plaintiff told Treadway and Herman that he would like to apply.

31. In response, Treadway told Plaintiff "I will keep u [sic] in mind", but approximately two weeks later, USWS filled the position with a less qualified Caucasian candidate.

32. In approximately November 2015, Plaintiff came to learn that another Crew Chief position had opened up, but when Plaintiff told Treadway and Herman that he wanted to apply, they responded that USWS was not going to fill that position.

33. Approximately a week or two later, USWS filled the open Crew Chief position with a Caucasian candidate.

34. In approximately July 2016, three (3) Crew Supervisor positions and two (2) Crew Chief positions became available.

35. This time, Plaintiff contacted the Uhrichsville District Manager, Brett Briggs ("Briggs") directly to discuss the open position.

36. Briggs, impressed by Plaintiff's credentials, told him he was more than qualified for a Crew Chief position, and asked why he had not applied for previous openings, to which Plaintiff responded that he did, though apparently Treadway and Herman (whom report to Briggs) failed to include him on their list of applicants.

37. On July 13, 2016, Plaintiff was promoted to Crew Chief for fleet 8, and began reporting to fleet 8 Crew Supervisor, Corey Williams ("Williams").

38. Although operating fracking vehicles is not part of the Crew Chief's job duties, because Plaintiff had a Commercial Driver License, USWS routinely assigned him to operate fracking vehicles, and prior to operating those vehicles, Plaintiff always performed the proper pre-trip inspection in accordance with Department of Transportation ("DOT") regulations.

39. On July 22, 2016, despite having performed a proper pre-trip inspection of the vehicle he was operating, Plaintiff was involved in a one-truck accident after the gas cap on the vehicle *malfunctioned* causing diesel fuel to spill on to the vehicle's tires, and causing the rear tires of the vehicle to slide into a ditch.

40. After the accident, William's took Plaintiff's pre-trip inspection paperwork (i.e., Job Safety Analysis, Driver Vehicle Inspection Report, and driving logs), took statements from Equipment Operators, Justin Seaman and Mitch Smith, whom witnessed Plaintiff perform a proper pre-trip inspection prior to operating the vehicle that day, and prepared an incident report.

41. Following the accident, Plaintiff began experiencing pain in his left side near his kidneys, so the fleet Safety Rep, James Dobra, called Axiom Medical LLC's hotline, and the Axiom Specialist stated that Plaintiff was likely suffering from a post-impact muscle strain, and advised that he seek medical treatment.

42. Thereafter, Plaintiff returned to Uhrichsville regional facility where he met with Briggs and Treadway and told them that Axiom advised him to seek medical treatment.

43. In response, Briggs told Plaintiff not to go to the hospital because it would be OSHA recordable, and told him to use his earned vacation days to take time off to heal without medical treatment.

44. Approximately 3 days after the accident, Williams called Plaintiff and informed him that he had forwarded Plaintiff's pre-trip inspection paperwork to Treadway at Treadway's request.

45. By August 3, 2018, the day Plaintiff was scheduled to return to work, the pain from his injury had not subsided.

46. When Plaintiff arrived to the Uhrichsville District facility in the morning on August 3, 2018, he apprised Briggs and Treadway of the status of his injury and told them that he was going to go to the hospital, to which Briggs and Treadway responded just take it easy that day.

47. Later that day, the muscle spasms from his injury caused Plaintiff to collapse.

48. After lunch that day, Plaintiff returned to the Uhrichsville District facility to tell Treadway that he was going to go to the hospital, but when Treadway met with Plaintiff at his office, Treadway falsely accused Plaintiff of failing to perform a pre-trip inspection, and advised Plaintiff that he was terminated.

49. Plaintiff reminded Treadway that he did perform a proper pre-trip inspection, as evidenced by pre-trip inspection paperwork he filled out, the statements of two witnesses (Justin Seaman and Mitch Smith), and Williams' incident report.

50. Treadway subsequently handed Plaintiff a Driver Vehicle Inspection Report that was filled out by someone other than Plaintiff, for a vehicle other than that which Plaintiff was operating on the day of the accident.

51. Plaintiff looked at the Driver Vehicle Inspection Report, noticed that it was not the report he filled out and that someone forged his signature on the report.

52. Plaintiff told Treadway that the report he handed Plaintiff was not the report Plaintiff filled out, and that the signature on the report was not Plaintiff's (but rather a forgery), and then asked Treadway to give him the reason for his termination in writing.

53. Treadway responded that he was done discussion the matter, and Plaintiff was subsequently escorted out of the building.

54. Upon information and belief, on several occasions, Caucasian fleet members, with USWS's knowledge violated DOT regulations, but here not terminated or otherwise disciplined.

55. Upon information and belief, throughout the duration of Plaintiff's employment with USWS, USWS did not employ any African American Supervisors, and with the exception of Plaintiff, there were no African American Crew Chiefs.

**COUNT ONE**

**Hostile Work Environment Sexual Harassment (Title VII and Ohio R.C. 4112)**

56. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57. Plaintiff is a member of a protected class under Title VII and Ohio R.C. 4112.02 based on his gender (male).

58. Over the course of Plaintiff's employment at USWS, he was continually subjected to unwanted and unwelcomed sexual harassment by his then-supervisor, Carlson, including but not limited to that which is described herein above, including in paragraphs 19-22 and 25-26.

59. The harassing conduct was severe and pervasive, unreasonably interfered with Plaintiff's work performance, and created an intimidating, offensive, and hostile work environment.

60. The harassing conduct was based on Plaintiff's sex (male).

61. The sexually harassing conduct was engaged in by Plaintiff's then-supervisor (Carlson).

62. Defendants knew that Carlson was sexually harassing Plaintiff, and knew that Carlson's harassing conduct created a hostile work environment for Plaintiff, but failed to take prompt and effective remedial action, and failed to provide Plaintiff with a work environment free of sexual harassment.

63. USWS is vicariously liable under Title VII for Carlson's harassing conduct.

64. USWS and Carlson are jointly and severally liable under Ohio R.C. 4112.

65. Defendants' conduct reflects an outrageous conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering Defendants liable for punitive damages.

66. As a result of Defendants' actions and inactions, Plaintiff suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT TWO
**Retaliation (Title VII and Ohio R.C. 4112)**

67. Plaintiff reavers and realleges each and every paragraph above as fully set forth herein.

68. Plaintiff engaged in the protected activity of reporting, to USWS, Herman, and Treadway, the sexually harassing conduct to which he was being subjected by Carlson.

69. USWS was aware that Plaintiff had engaged in the protected activity of reporting Carlson's sexually harassing conduct.

70. After, and as a result of Plaintiff having engaged in the protected activity of reporting Carlson's sexually harassing conduct, USWS took adverse employment actions against Plaintiff, including, *inter alia*, refusing to consider Plaintiff for a promotion to Crew Chief or Crew Supervisor, passing Plaintiff over for various open Crew Chief positions in favor of less qualified candidates, passing Plaintiff over for open Crew Supervisor positions in favor of less qualified candidates, and terminating Plaintiff's employment.

71. The retaliatory conduct described above was engaged in recklessly, maliciously and intentionally, and violated Plaintiffs rights under Title VII and Ohio R.C. 4112.

72. USWS's conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering USWS liable for punitive damages.

73. As a result of the USWS's retaliatory actions and inactions, Plaintiff suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**COUNT THREE**
**Disability Discrimination (ADA and Ohio R.C. 4112)**

74. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

75. Plaintiff is a member of a protected class under the ADA (42 U.S.C. §§ 12102 and 12112) and R.C. 4112.02 because at the time of his termination, he was disabled and/or perceived as being disabled by CSWS.

76. CSWS discriminated against Plaintiff with respect to the terms and conditions of his employment based on his disability and/or perceived disability in violation of the ADA.

77. CSWS took adverse and discriminatory employment actions against Plaintiff, at least in part, because of his disability and/or perceived disability, including by *inter alia*: failing to engage in an interactive process with Plaintiff, failing to accommodate Plaintiff, including with medical leave or appropriate transfer, and terminating Plaintiff's employment.

78. CSWS's discriminatory actions and inactions deprived Plaintiff of equal employment opportunities because of his disability and/or perceived disability in violation of the ADA and Ohio R.C. 4112.

79. CSWS's discriminatory conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering CSW liable for punitive damages.

80. As a direct result of CSWS's unlawful employment practices in violation of the ADA and Ohio R.C. 4112, Plaintiff suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT FOUR
## Race Discrimination (Ohio R.C. 4112)

81. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

82. Plaintiff, a member of a protected class based on his race (African American), is and was qualified for the position of Crew Chief and Crew Supervisor for USWS.

83. Plaintiff was, and is, equally and/or more qualified than his similarly situated Caucasian co-workers.

84. USWS subjected Plaintiff to discriminatory and disparate treatment based on his race.

85. USWS took adverse employment actions against Plaintiff and treated him worse than his similarly situated Caucasian co-workers with respect to the terms and conditions of employment, based, at least in part, on his race, including by, *inter alia*: repeatedly refusing to offer him Supervisor positions, and instead, offering those positions to less-qualified Caucasian candidates; initially repeatedly refusing to offer him Crew Chief positions, and instead, offering those positions to less-qualified Caucasian candidates; falsely accusing Plaintiff of failing to perform a proper pre-trip inspection, and terminating Plaintiff's employment.

86. USWS's discriminatory actions and inactions deprived Plaintiff of equal employment opportunities because of his race.

87. USWS's discriminatory conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering USWS liable for punitive damages.

88. As a direct result of USWS's unlawful discriminatory employment practices, some of which are detailed above, Plaintiff suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**COUNT FIVE**

**Wrongful Termination in Violation of Public Policy (Ohio Common Law)**

89. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

90. There is a clear public policy, as manifested in state and/or federal constitutions, statutes, regulations, and/or common law, including Ohio R.C. §§ 4101.11 and 4101.12, the Occupational Safety and Health Standards, 29 C.F.R. 1904, 29 C.F.R. 1904.4, 29 C.F.R. 1904.26, and *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St.3d 77, 760 N.E.2d 385 (2002), which favors safety

in the workplace, and requires employers to do everything necessary to protect the health, safety, and welfare of employees.

91. USWS terminated Plaintiff, at least in part, because he refused to adhere to USWS's request not to seek medical treatment, and advised USWS that he would be going to the hospital for his work-related injury.

92. USWS terminated Plaintiff, at least in part, to avoid OSHA recording in connection with Plaintiff's injury.

93. Taking adverse action against Plaintiff, after and because he refused to adhere to USWS's request not to seek medical treatment and advised USWS that he would be going to the hospital would jeopardize public policy.

94. USWS lacked an overriding legitimate business justification for terminating Plaintiff's employment.

95. USWS's conduct reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering USWS liable for punitive damages.

96. As a result of the foregoing actions of USWS, Plaintiff has suffered damages, including but not limited to lost wages and mental anguish in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**DAMAGES**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

A. Order Defendants to make Plaintiff whole by providing compensation in the form of economic, emotional, and punitive damages, in an amount in excess of Seventy-Five Thousand Dollars ($75,000).

B. Award Plaintiff appropriate back pay, front pay, and reimbursement for lost and unpaid wages and bonuses in an amount to be proven at trial;

C. Grant Plaintiff his attorney's fees, costs, and disbursements;

D. Award Plaintiff pre- and post-judgement interest at the statutory rate; and

E. Grant such further and additional relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
*mgrimsley@groedel-law.com*
Drew A. Carson (0037641)
*dcarson@groedel-law.com*
Caryn M. Groedel (0060131)
*cgroedel@groedel-law.com*
CARYN GROEDEL & ASSOCIATES CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH 44139
Telephone: (440) 544-1122
Facsimile: (440) 996-0064
Attorneys for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
One of Plaintiff's Attorneys