IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DUNYASHA YETTS, | ) | Case No. 5:18-cv-01115-JRA |
| | ) | |
| Plaintiff, | ) | Judge Pamela A. Barker |
| | ) | |
| vs. | ) | **PLAINTIFF'S MOTION FOR** |
| | ) | **RECONSIDERATION OF APRIL 4,** |
| U.S. WELL SERVICES, LLC, *et al.*, | ) | **2019 ORDER AND REQUEST TO** |
| | ) | **REOPEN EXPERT DISCOVERY** |
| Defendants. | ) | |

Plaintiff, Dunyasha Yetts, by and through counsel, respectfully moves this Honorable

Court to reconsider the April 4, 2019 Order denying Plaintiff's March 21, 2019 Motion to

Enlarge Expert Discovery Deadlines (Doc # 43), and respectfully requests that the Court reopen

expert discovery.  A memorandum in support follows and is incorporated herein by reference.

Respectfully submitted,

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
Caryn M. Groedel (0060131)
Caryn Groedel & Associates Co., LPA
31340 Solon Road, Suite 27
Cleveland, OH 44139
Telephone:  (440) 544-1122
Facsimile:   (440) 996-0064
mgrimsley@groedel-law.com
cgroedel@groedel-law.com
***Attorneys for Plaintiff***

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
RECONSIDERATION OF APRIL 4, 2019 ORDER AND REQUEST TO REOPEN
EXPERT DISCOVERY**</u>

**I.      INTRODUCTION**

Plaintiff, who intended to retain an expert to prepare a report on his economic damages,

moved to enlarge his April 3, 2019 expert disclosure/report deadline because, at that time,

Defendant U.S. Well Services ("USWS") had yet to produce the documents and information

needed to adequately calculate his economic damages.[1]  Although USWS "[did] not necessarily

object to Plaintiff's request for an enlargement of time to identify experts, to produce expert

reports, or for a telephonic status conference. . ." (Doc # 41 at p. 4), the Court nonetheless denied

Plaintiff's motion on April 4, 2019 (Doc # 43).  As discussed herein, the grounds justifying

reconsideration of the Court's April 4, 2019 Order include: **(1)** new evidence—which USWS

previously withheld—that was needed to calculate Plaintiff's economic damages; **(2)** the need to

prevent a manifest injustice, and rectify a clear error; **(3)** the interest in preserving judicial

economy; and **(4)** the lack of prejudice that will result from reopening expert discovery.

**II.     BACKGROUND**

**A.      <u>Summary of Allegations Pertinent to this Motion</u>**

Plaintiff, who is African American, asserted the following claims arising from his

employment with, and termination from, USWS: (1) harassment; (2) retaliation; (3)

disability/perceived disability discrimination; (4) race discrimination; and (5) wrongful discharge

---

[1]  In fact, as discussed in Plaintiff's July 1, 2019 Motion for Reconsideration of the Court's June
8, 2019 Order (Doc # 54 at 10-11), USWS still has not produced all the paper discovery Plaintiff
intends to use to calculate his lost income arising from USWS's failure to promote him to
*Service Supervisor*.  He intends to calculate those damages by subtracting the income he earned
from the income earned by individuals who filled the open Service Supervisor positions. To do
so, Plaintiff needs the income information from the personnel file for those five individuals who
were awarded Service Supervisor positions over Plaintiff, which USWS has yet to produce.

in violation of public policy.

On February 18, 2015, Plaintiff—who had prior experience working as a fracking crew supervisor—submitted an application to USWS for a supervisor position.  However, as explained in the Complaint, in Spring 2015, USWS's HR Administrator, Sarah Herman (n/k/a Sopko), told Plaintiff there were no supervisor position openings at that time, and USWS instead offered Plaintiff an Equipment Operator position, but assured him that he would be considered for supervisor positions when they became available.

On May 22, 2015, Plaintiff commenced his employment as an Equipment Operator for USWS, and from May 2015 through August 2015, Plaintiff was repeatedly subjected to severe and pervasive harassment by Sean Carlson, who was the Service Supervisor of the crew on which Plaintiff worked at the time.  Plaintiff repeatedly reported Carlson's harassment to Sarah Sopko and his Operations Manager, Chris Treadway, and requested to be assigned to a different crew.

Moreover, on several occasions between Summer 2015 and Summer 2016, Plaintiff learned of various supervisor (Crew Chief and Service Supervisor) position openings in USWS's Uhrichville District (the district in which Plaintiff worked and reported to Operations Manager Chris Treadway).  As such, Plaintiff repeatedly reached out to Sarah Sopko and Chris Treadway, by email, text message, telephone, and/or in-person, seeking confirmation that he was being considered for those positions, or otherwise requesting to apply.  Sopko responded to some of Plaintiff's requests by suggesting she was unaware of such position openings, or that no such positions were available; and Treadway responded to at least one of Plaintiff's requests by telling Plaintiff that he (Treadway) would keep him (Plaintiff) in mind.

Towards that end, as part of his claims for race discrimination and retaliation for reporting harassment, Plaintiff avers that USWS repeatedly passed him over for open Crew Chief

and Service Supervisor positions in favor of less-qualified individuals who were not African American and/or who did not engage in the protected activity of reporting harassment.

Plaintiff finally did secure an open Crew Chief position on July 18, 2016 (after going over Chris Treadway's head and speaking directly with the District Manager, Brett Biggs), but at no point was Plaintiff offered a Service Supervisor position, and Plaintiff's Crew Chief position was short-lived as Chris Treadway notified Plaintiff that he was being terminated on August 3, 2016—just two weeks after Plaintiff secured the Crew Chief position, just ten days after Plaintiff was involved in accident that caused him to sustain a work-related injury, and on the same day that Plaintiff first returned to work after his accident, and told Chris Treadway that he needed to obtain medical treatment for his injury, which treatment would be OSHA recordable.

Towards that end, as part of Plaintiff's race discrimination and retaliation claims, as well as Plaintiff's claims for disability discrimination and wrongful discharge in violation of public policy, Plaintiff avers, *inter alia*, that USWS terminated him because of his race, because he reported harassment, because he was sustained a work-related injury that rendered him temporarily disabled and/or perceived as being disabled, and because he refused to adhere to USWS's request not to seek medical treatment, and advised USWS that he would be going to the hospital for his work-related injury.

  **B.**  <u>Discovery Matters Relevant to this Motion</u>

Plaintiff intended to retain a financial expert to prepare a report on his economic damages.  Part of Plaintiff's economic damages relate to his allegations (discussed above) that USWS failed to offer him open Service Supervisor positions, and prior to July 17, 2016, failed to promote him to open Crew Chief positions.  Towards, that end, the following is a general description of the basic formula for calculating Plaintiff's back pay relative to the failure to

promote part:  income USWS paid to the less-qualified Crew Chiefs and Service Supervisors who were awarded positions over Plaintiff <minus> the income Plaintiff received, from the date the open Crew Chief and Service Supervisor positions were filled through the date Plaintiff obtained his current job—November 26, 2018 (as that is likely when Plaintiff's back pay cutoff).

As such, on August 17, 2018, Plaintiff propounded discovery requests seeking, *inter alia*: (1) personnel documents and information pertaining to the individuals who were awarded open Crew Chief and Service Supervisor positions over Plaintiff, **including the *dates* on which those individuals were awarded said positions** (*see, e.g.,* Ex. 1 at Interrogs. 9, 10, 11, and 12)—as that information is needed to determine when Plaintiff's lost income began to accrue; and (2) **documents/information reflecting the income (wages, salary, bonuses) and benefits USWS paid to Crew Chiefs and Service Supervisors** (Ex. 2 at Reqs. 2 and 10).  Moreover, Plaintiff agreed to limit his requests for income information to those individuals who were awarded open Service Supervisor or Crew Chief positions in the Uhrichville District during the timeframe Plaintiff was seeking those positions, from the date those individuals filled the open positions through November 26, 2018.  (Note: Although Plaintiff propounded his discovery requests on August 17, 2018, the Court stayed discovery until after the initial Case Management Conference (Doc # 13), and thus, USWS's responses were not due until January 21, 2019).

On December 17, 2018, Plaintiff and USWS submitted a joint Planning Meeting Report ("Rule 26(f) Report"), in which they proposed an agreed upon case schedule whereby expert discovery would take place ***after*** fact discovery and dispositive motions. (Doc # 24 at p. 4.)

On December 20, 2018, the Case Management Conference was held.  Instead of adopting Plaintiff and USWS's proposal to engage in expert discovery after fact discovery, the Court entered a Case Management Plan, pursuant to which, Plaintiff's expert discovery deadline was

March 4, 2019, and the fact discovery deadline was July 1, 2019.  (Doc # 25-1 at pp. 1-2.)  The Court also ordered that: "Depositions shall begin with that of Plaintiff."  (*Id.* at p. 1.)

On February 11, 2019, USWS produced its answers to Plaintiff's Interrogatories, but failed to identify any of the individuals who were awarded open Crew Chief and Service Supervisor positions, and failed to identify the dates on which said positions were awarded, as requested in Interrogatories 9 through 11.  (*See* Ex. 1.)

On February 14, 2019, the Court entered the Stipulated Protective Order.  (Doc # 32.)

As of February 14, 2019, USWS had yet to respond to Plaintiff's Requests for Production, at least in part because the Stipulated Protective Order—which was filed on January 3, 2019 (Doc # 27)—had not been signed and entered by the Court until that day.  Thus, on February 14, Plaintiff filed an Unopposed Motion to Enlarge Expert Discovery Deadlines, as the documents he needed to calculated his economic damages had yet to be produced by USWS.

On February 21, 2019, the Court granted Plaintiff's February 14 Motion, thereby enlarging the deadline for Plaintiff to identify his expert and produce his expert's report to **April 3, 2019**.  (Doc # 34.)  Also on February 21, Plaintiff's counsel sent USWS's counsel a second good faith discovery deficiency letter, addressing USWS's deficient responses to Plaintiff's Interrogatories, requesting USWS's then-overdue responses to Plaintiff's Requests for Production, and requesting to meet and confer regarding discovery.  (Plaintiff's February 21 letter was attached as Ex. 1 to his May 31, 2019 Position Statement.)

On March 7, 2019, counsel for Plaintiff and counsel for USWS attended a lengthy telephone meet and confer, during which Plaintiff, through counsel, agreed to narrow the scope of various discovery requests, and specifically requested that USWS promptly produce income information (as requested in Requests for Production Nos. 2 and 10) for those individuals who

filled the open Crew Chief and Service Supervisor positions over Plaintiff in the district(s) in which Plaintiff worked (which the parties have concluded was the "Uhrichsville District").

On **March 14, 2019**—*less than 3 weeks* **before Plaintiff's expert discovery deadline**— USWS finally served its written responses to Plaintiff's Request for Production, along with its *first* set of responsive documents, which was limited to an Employee Handbook and documents from Plaintiff's personnel file.  USWS had not, at that time, produced any personnel files for Plaintiffs comparators (as requested in Request No. 2); nor had USWS identied the individuals who were awarded open Crew Chief and Service Supervisor positions over Plaintiff, or the dates on which they were awarded said positions; nor did USWS produce complete income information for Service Supervisor and Crew Chiefs in the district in which Plaintiff worked—all despite Plaintiff having agreed to limit the scope of his requests for such discovery.  Instead, USWS stated, in its written response to Plaintiff's Request for Production No. 10:

> [S]uch information will vary depending upon location, seniority, and experience. Further, Defendant will supplement should documents be discovered that are responsive to this request for wage-rates and benefits for the positions of Equipment Operators, Crew Chief, and Service Supervisor at Uhrichsville District between Plaintiffs date of hire and termination (May 12, 2015 to August 4, 2016). In further response, the wage rates for the Uhrichsville District between Plaintiffs date of hire and termination (May 12, 2015 to August 4, 2016) are as follows:
>
> Senior Equipment Operator: $21.63/hr.
> Crew Chief: $24.72/hr.
> Service Supervisor: Salaried at $90,000.00 per year plus bonus eligible.

(Ex. 2 at p. 9.)  This limited information is blatantly inadequate to enable any financial expert to fully calculate Plaintiff's economic damages because:  **(1)** it is limited to the period of "May 12, 2015 to August 4, 2016", and Plaintiff's period of back pay extends to approximately November 26, 2018—more than two years after "August 4, 2016"; **(2)** it fails to identify, and USWS had yet to otherwise identify, *when* the individuals, who were awarded open Crew Chief and Service

Supervisor positions over Plaintiff, obtained their respective supervisor positions—**which Plaintiff needed in order to establish when his back pay began to accrue** (in fact, USWS had yet to even identify the names of the individuals who were awarded said positions); **(3)** while USWS's written response does set forth an arbitrary hourly wage-rate for Crew Chiefs, it contains no information pertaining to the number of hours assigned to those Crew Chiefs; and **(4)** while USWS's response did provide an arbitrary salary for Service Supervisors ($90,000), it provided **no information pertaining to the "bonus eligible" for those Service Supervisors**.[2]

Thus, on March 21, 2019, Plaintiff filed another Motion to Enlarge Expert Discovery, and a Request for Telephonic Conference pursuant to LR 37.1.  (Doc # 40.)  USWS subsequently filed its response, in which it stated: "USWS does not necessarily object to Plaintiff's request for an enlargement. . ."  (Doc # 41 at p. 4), and on April 4, 2019, Plaintiff filed his Reply (Doc # 42).

On April 4, 2019 (the day after Plaintiff's expert discovery deadline) the Court denied Plaintiff's March 21 Motion, including his request for a discovery conference, stating that:

> [I]t appears that USWS has already produced the rate and salary information that is the subject of Plaintiff's motion. To the extent Plaintiff seeks additional rate and salary information, Plaintiff's requests are overbroad and not relevant to the wage-rate/salary information for "Service Supervisors and Crew Chiefs" – the positions for which Plaintiff claims to require such information.

(Doc # 43.)  However, the only rate/salary information that USWS produced was its written response to Request No. 10 ( "Crew Chief: $24.72/hr.", and "Service Supervisor: Salaried at $90,000.00 per year plus bonus eligible"), and as discussed above, and as explained in detail in Plaintiff's April 4 Reply (Doc # 42 at pp. 3-4), this limited information is—in no way— sufficient to enable an expert to fully calculate Plaintiff's economic damages.

---

[2] Notably, even if the information in USWS's written response to Request No. 10 were sufficient to enable a financial expert to fully calculate Plaintiff's economic damages (which it is not), said information was not produced until *March 14, 2019—less than 3 weeks* before Plaintiff's expert report deadline.

On May 23, 2019, after making several good faith efforts to obtain discovery from USWS—including four detailed discovery dispute letters (attached to Plaintiff's May 31, 2019 Position Statement as Exs. 1, 2, 3, and 4), several discovery-related emails, meeting and conferring with USWS's counsel on multiple occasions, and agreeing to narrow the scope of Plaintiff's discovery requests—Plaintiff's counsel (with USWS's counsel) contacted the Court to obtain guidance on their discovery dispute.  The Court then instructed counsel to submit, *via* email, 2-page position letters, and set a discovery conference for June 10, 2019.  (Doc # 49.)

On **May 30, 2019**, USWS finally produced an employee list revealing—**for the first since this case was filed**—the individuals who filled the open Crew Chief and Service Supervisor positions over Plaintiff, and the **dates** on which those positions were filled. (Ex. 3.)

On May 31, 2019, Plaintiff's counsel submitted, *via* email to the Court, Plaintiff's Position Statement regarding discovery and various exhibits thereto.

On June 10, 2019, the scheduled discovery dispute conference was held, during which Plaintiff's counsel informed the Court of, *inter alia*, USWS's failure to produce: (1) personnel files for Crew Chiefs in the Uhrichsville District during Plaintiff's period of employment with USWS; and (2) personnel files for those Service Supervisors who were awarded their positions over Plaintiff during the timeframe he was seeking said positions.

The Court subsequently ordered USWS to produce several documents, including personnel files for seven (7) individuals who held the position of Crew Chief.

Although the Court did not order USWS to produce personnel files for the five (5) individuals (also identified in Plaintiff's July 1, 2019 Motion (Doc # 54 at p. 6) who were awarded Service Supervisor positions over Plaintiff, USWS did produce, on ***June 14, 2019,*** the following documents for one individual who was promoted to Service Supervisor in the

Uhrichsville District in December 2017: (1) an offer letter reflecting the specific bonus information and benefits for a Service Supervisor in the Uhrichsville District (Ex. 4); and (2) a document reflecting that the individual, during his first full year as a Service Supervisor, earned an annual income in excess of $160,000 (Ex. 5).  **In other words, on *June 14, 2019*, USWS finally produced—for the first time since this case was filed—a document reflecting that a Uhrichville District Service Supervisor, during his first full year in that position, earned an annual income in excess of $160,000, which is nearly double the "$90,000" Service Supervisor salary set forth in USWS's written response to Request No. 10.**

On June 20 and June 21, 2019—three weeks after Plaintiff's deposition, which took place on May 30, 2019[3]—Plaintiff's counsel took depositions of the following USWS employees in Houston, Texas:  Dean Fullerton (VP of Human Resources); Sarah Sopko; and Chris Treadway. Dean Fullerton (who gave testimony relative to certain topics in Plaintiff's Rule 30(b)(6) depositions notice) provided: (1) testimony pertaining to the number of hours Crew Chiefs worked throughout the year; (2) testimony relative to the wage rate at which Crew Chiefs were compensated and the salary at which Service Supervisors were compensated over the course of Plaintiff's period of backpay (i.e., through the date Plaintiff retained his current job); and (3) additional information pertaining to the bonus eligibility for Service Supervisors.

## III.    LEGAL STANDARD

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment."  *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991).  "The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, **the availability of new evidence, *or* the need to correct a clear**

---

[3] Per the Court's December 21, 2018 Order, Plaintiff's deposition was to be taken before any other depositions.  (Doc # 25-1 at p. 1.)

**error *or* prevent manifest injustice.**" (Emphasis added.)  *Reich v. Hall Holding Co.*, 990

F.Supp. 955, 965 (N.D. Ohio 1998).

IV.     **ARGUMENT**

     A.     <u>**Reconsideration is warranted based on newly obtained evidence.**</u>

       Plaintiff just recently obtained the critical discovery needed (but which USWS previously

withheld) in order for an expert to prepare a report on his economic damages, including:

       (1)   The employee list produced on ***May 30, 2019*** (Ex. 3), reflecting the dates on which

open Crew Chief and Service Supervisor positions were filled in the Uhrichsville District during

the time frame Plaintiff was seeking said positions—**which was needed to determine *when***

**Plaintiff's economic damages began to accrue**;

       (2)   Personnel documents produced on ***June 14, 2019*** (e.g., Exs. 4 and 5), and deposition

testimony on ***June 20, 2019***, pertaining to the bonus eligibility and actually income received by

Service Supervisors—**which information was needed as in order to determine the total**

**income Plaintiff would have received as a Service Supervisor**;

       (3)   A personnel document produced on ***June 14, 2019*** (Ex. 5) reflecting that a

Uhrichsville District Service Supervisor earned $160,000 (nearly double the "$90,000 salary")—

**a substantial sum that Plaintiff would not have been able to account for at the time his**

**expert report was due**;

       (4)   Testimony on ***June 20, 2019***, pertaining to the number of hours (regular and

overtime) Crew Chiefs worked—**which information is needed in order to determine the total**

**wages Plaintiff would have earned as a Crew Chief**; and

       (5)   Personnel documents produced on ***June 14, 2019***, and testimony on ***June 20, 2019***,

pertaining to the hourly wage rate and benefits for Crew Chiefs in the Uhrichsville district

*through the date Plaintiff began his current job (approx. November 26, 2018)*, and the salary and benefits for Service Supervisors *through the date Plaintiff began his current job*—**which was needed in order to calculate economic damages through his entire back pay period**.

**B.     Reconsideration is necessary to prevent a manifest injustice and rectify a clear error.**

The Court clearly erred by denying Plaintiff's March 21 Motion to Enlarge Expert Discovery and Request for Telephonic Conference.  At the time of the April 4, 2019 Order, the only relevant information USWS provided was its written response to Request No. 10:

> [T]he wage rates for the Uhrichsville District between Plaintiffs date of hire and termination (May 12, 2015 to August 4, 2016) are as follows:
>
> Senior Equipment Operator: $21.63/hr.
> Crew Chief: $24.72/hr.
> Service Supervisor: Salaried at $90,000.00 per year plus bonus eligible.

(Emphasis added.)  (Ex. 2 at p. 9)  USWS had yet to otherwise provide the critical evidence mentioned in Section III.A., *supra*, and the limited information set forth in its written response to Request No. 10 is blatantly inadequate to enable any financial expert to fully calculate Plaintiff's economic damages relative the failure to promote portion of his claims.

(1)  It fails to identify, and USWS had yet to otherwise identify, ***when*** the less-qualified individuals who were awarded open Crew Chief and Service Supervisor positions over Plaintiff, obtained their respective supervisor positions, and thus, Plaintiff could not determine, with any degree of certainty, ***when*** his back pay began to accrue;

(2)  It states "Service Supervisor: Salaried at $90,000.00 per year *plus bonus eligible*", but contains no information, and USWS had yet to otherwise produce any information, pertaining to what the "bonus eligible" was for Service Supervisors;

(3)  It conceals, and USWS had yet to otherwise produce evidence revealing, that a

11

Uhrichville District Service Supervisor earns in excess of $160,000;

(4)   It contains no information, and USWS has yet to otherwise provide information, pertaining to the number of hours assigned to the individuals who were awarded open Crew Chief positions over Plaintiff, and because Crew Chiefs are hourly employees, said information is needed in order to determine the total wages Plaintiff would have earned annually; and

(5)   It is limited to the period of "May 12, 2015 to August 4, 2016", but Plaintiff's period of back pay extends to approximately November 26, 2018.

Moreover, the Court did not address: the manner in which Plaintiff agreed to limit the scope of his Requests; the duration of Plaintiff's period of backpay; USWS's failure to identify when the open positions were to individuals other than Plaintiff; USWS's failure to provide any information pertaining to the "bonus eligible" for Service Supervisors; and that USWS—which had yet to produce any responsive documents other than a handbook and *Plaintiff's* personnel file—did "not necessarily object to Plaintiff's request for an enlargement of time to identify experts, to produce expert reports, or for a telephonic status conference. . ."  (Doc # 41, p. 4.)

Simply put, the Court erred in denying Plaintiff's March 21, 2019 Motion, and it would be manifestly unjust to deprive Plaintiff of a fair opportunity to have an expert prepare a report on his economic damages.

### C.   Reconsideration is necessary to remedy an abuse of discretion and preserve judicial economy.

If the Court does not reconsider the April 4, 2019 decision, then after trial, Plaintiff will likely appeal from said decision to the Sixth Circuit, and while Plaintiff has an abundance of respect for this Court, the Sixth Circuit will likely find that it abused its discretion.  Towards that end, reopening expert discovery now will likely preserve judicial economy, as it will eliminate the necessity for Plaintiff to appeal from the Court's April 4, 2019 decision after trial.

The Sixth Circuit has adopted the view that motions to enlarge time for discovery "should be granted almost as a matter of course" unless the party requested additional time, has not diligently pursued discovery. *Jane Doe v. City of Memphis*, --- F.3d ----, 2019 WL 2637637, \*6 (6th Cir. June 27, 2019); *FTC v. E.M.A. Nationwide, Inc*., 767 F.3d 611, 623, n. 7 (6th Cir.2014).

In the case at bar, it is undisputable that Plaintiff diligently pursued discovery in this case, including the discovery needed to adequately calculate his economic damages. On August 17, 2018 (nearly a year ago), Plaintiff propounded Interrogatories and Requests for Production seeking the general categories of discovery he needed from USWS in order for an expert to fully calculate his economic damages, but the Court stayed discovery (Doc # 13), and thus, effective provided USWS with more than 5 months to respond to Plaintiff's requests. As discussed in Section II, *supra*, after the discovery stay was lifted, Plaintiff's counsel: (1) transmitted detailed discovery deficiency letters; (2) sent several discovery-related emails to USWS's counsel; (3) met and conferred at length with USWS's counsel; (4) agreed to narrow the scope of Plaintiff's discovery requests; and (5) repeatedly notified the Court—well in advance of the expert discovery deadline—of the issues that were impeding Plaintiff's ability to have an expert prepare a complete report on his economic damages (i.e., USWS failure to produce the discovery needed to do so), including in Plaintiff's: (a) **February 4, 2019** Status Report (Doc # 29); (b) **February 14, 2019** Unopposed Motion to Enlarge Expert Discovery (Doc # 33); (c) **March 21, 2019** Status Report (Doc # 39); (d) **March 21, 2019** Motion to Enlarge Expert Discovery Deadlines (Doc # 40); and (e) **April 4, 2019** Reply in support of his March 21, 2019 Motion (Doc # 42).

Moreover, to ensure that the Court was fully informed of the specific issues that were impeding his ability to comply with the expert discovery deadline, and in an effort to resolve the parties' dispute relative to comparator-related discovery, Plaintiff requested, in his March 21,

2019 Motion, a discovery conference pursuant to Local Rule 37.1 (Doc # 40), which "USWS d[id] not necessarily object to. . ." (Doc # 41 at p. 4). Nonetheless, the Court determined that such a conference was "not necessary", and simultaneously declined to enlarge expert discovery.

Fact discovery is particularly extensive in employment discrimination cases. Whereas here, part of the plaintiff's claims arise from a failure to promote, and the plaintiff was not notified, on any date, that he was not being promoted, and did not otherwise know precisely when, or by whom, the positions sought were filled, then in order to determine his/her lost income resulting from the failure to promote, the plaintiff needs fact discovery pertaining to *when* the comparators were awarded the positions over him/her, and the income those comparators earned upon receiving their promotion. For this reason (among others), Plaintiff agreed with USWS, to a joint proposal whereby expert discovery would take place ***after*** fact discovery, and thus, after Plaintiff obtained all the fact discovery needed to adequately calculate his economic damages. Nonetheless, the Court rejected the joint proposal, and coupled with USWS's failure to timely produce the necessary fact discovery, Plaintiff—through no fault of his own—was without that which he needed to complete expert discovery within the brief period of time that the Court ordered him to do so.

>    **D.  Reopening expert discovery will not impact the remaining dates on the case schedule, and will not prejudice USWS.**

Reopening expert discovery will not impact the remaining dates on the case schedule, nor will it prejudice USWS. First, the final pretrial date—**November 18, 2019**—is more than 4 months away, and trial is not until **December 2, 2019**. The parties have more than enough time between now and the final pre-trial date to complete expert discovery. Second, reopening expert discovery will not impact dispositive motions, as expert discovery will be limited to economic damages, which are a question for the trier of fact. Third, USWS previously agreed, in the

14

parties' Rule 26(f) Report, to engage in expert discovery *after* the conclusion of fact discovery.

Thus, USWS should have no basis for opposing Plaintiff's request to reopen expert discovery.

Fourth, USWS's conduct in withholding the necessary fact discovery, is the reason why Plaintiff

was unable to complete expert discovery.  Thus, while USWS will not be prejudiced should the

Court reopen expert discovery, Plaintiff will be unfairly prejudiced should it not.

## IV.    CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that this Honorable Court

reconsider the April 4, 2019 Order, and reopen expert discovery.   Should the Court grant the

instant motion, Plaintiff proposed the following:

| | |
|---|---|
| Plaintiff's expert disclosure/report deadline: | September 13, 2019 or 4 weeks after the Court rules upon the instant Motion, whichever is later. |
| USWS's expert disclosure/report deadline: | October 18, 2019 or 9 weeks after the Court rules upon the instant Motion, whichever is later. |
| Deadline to take depositions of experts (if any): | November 1, 2019 or 11 weeks after the Court rules upon the instant Motion, whichever is later. |

Respectfully submitted,

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
Caryn M. Groedel (0060131)
Caryn Groedel & Associates Co., LPA
31340 Solon Road, Suite 27
Cleveland, OH 44139
Telephone:  (440) 544-1122
Facsimile:   (440) 996-0064
mgrimsley@groedel-law.com
cgroedel@groedel-law.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on this 12th day of July, 2019.
Notice of this filing will be sent by the Court's electronic filing system.  Parties may access this
filing through the Court's system.

*/s/ Matthew S. Grimsley*